## Common Pleas of Philadelphia.

### GREEVES *against* M'ALLISTER.

1809.

*Saturday,*
*July 15.*

ASSUMPSIT for money paid laid out and expended by the plaintiff for the use of the defendant, and at his special instance and request. Plea, the general issue.

Upon the trial of the cause it appeared in evidence, that the plaintiff was special bail in 2000 dollars for one *Sterling*, in a suit brought in the Supreme Court, and that the defendant and another were bail in 5000 dollars for *Sterling*, in two suits brought in the Circuit Court of the *United States. Sterling* being destitute of property, and having gone out of the state, the plaintiff was fearful of being fixed for the debt, and took out a bail-piece, upon which he brought *Sterling* from *Baltimore* to *Philadelphia* at some expense, and surrendered him. On the day of the surrender he communicated it to the defendant, who promised to pay his proportion of the expense, and who the next day surrendered *Sterling* in each of the suits in the Circuit Court.

Taking and surrendering a person upon a bail-piece for whom the plaintiff was bail, in consequence of which the defendant also surrendered him in a suit in which he was bail, is a good consideration to support a promise by the defendant *after* the surrender, to pay a proportion of the expense attending it.

The action was brought upon this promise, which the defendant's counsel said was *nudum pactum;* but the court charged the jury, that if they believed the defendant had derived any benefit from the act of the plaintiff, the promise was binding in law, notwithstanding the consideration was past, at the time of the promise; and the jury found for the plaintiff 102 dollars 24 cents.

A motion was made for a new trial, upon the ground of misdirection.

*Sergeant* for the defendant contended that the consideration in evidence was not sufficient to support a promise, because it was past and executed, and the act was done not only without the defendant's previous request, but without his knowledge. That it was done moreover not with a view to benefit the defendant, but to benefit the plaintiff himself, the advantage which the former derived, being wholly involuntary as it respected the latter; so that there was no consideration upon the ground of benefit, or even upon the ground

APPENDIX.

GREEVES
*v.*
M'ALLISTER.

of moral obligation, if such an obligation could be held sufficient in law to support a promise. He cited *Hunt* v. *Bale* (*a*), 1 *Selw. N. P.* 48., 1 *Pow. on Contr.* 348., and 2 *Bl. Com.* 448.

*Hallowell* for the plaintiff, answered, that whether or not the promise could be supported upon the ground of moral obligation, which he confessed was a subject of doubt, after the learned note to *Wennall* v. *Adney* (*b*), yet it clearly might be upon the ground of benefit to the defendant; for that the spirit of all the modern authorities was, that if an act be done, though without the defendant's express request or even his knowledge, yet if it be for his benefit, and he afterwards receives the benefit, and promises payment, it is equivalent to a previous request. It was wholly immaterial, he said, that the plaintiff at the same time intended to benefit himself. His motives were not examinable. He cited 1 *Selw. N. P.* 49. *note* 8., *Osborne* v. *Rogers*, (*c*), and *Stokes* v. *Lewis* (*d*).

RUSH *President.* It is extremely clear, that there was a *consideration* in this case, for the promise; because the defendant had, in fact, derived a very important benefit and advantage at the expense and labour of the plaintiff. When the interest of a man is promoted, though not at his request, and he deliberately after engages to pay for it, the law very properly says, he shall fulfil his promise. If two men bind themselves in behalf of a third, and one of them, to avoid an arrest, should pay the whole money, the other, in case of an actual promise, would be liable to pay his proportion. The old rule, that an action will not lie, where the consideration is *past*, has received a rational explanation from the liberal ideas that actuate modern courts of justice. Though the *service* has been rendered *prior* to the promise, yet if the party be under either a *legal* or *moral* obligation to pay, the promise will bind him. Where a bastard child was put to nurse by the uncle of the mother, it was held that a promise subsequently made by the father to pay for its support, was binding. An apothecary attended a pauper, but not at the

(*a*) *Dyer* 272.      (*c*) 1 *Saund.* 264. *n.* 1.
(*b*) 3 *Bos. & Pull.* 249.      (*d*) 1 *D. & E.* 20.

*request* of the overseers of the poor. A promise subsequently made by them to pay the apothecary, was held binding. In the one case, the promise was founded on a prior *moral* obligation; in the latter, on a prior *legal* obligation.

I cannot think it material in this case, to inquire whether *Greeves intended* to confer a benefit on the defendant, when he went to *Baltimore.* The fact is, he *has* done it. Nor is it material, whether he *informed* him of his intent, prior to his conferring the benefit. If moral obligation depended always upon the purity of *motive* in the benefactor, I fear there would be but little moral obligation left in the world. That *Greeves's* conduct in bringing up *Sterling*, was a disinterested act, is not asserted. But where a man equally promotes his own interest, and the interest of another, though the person benefited may not be under any tie of gratitude, yet surely he is under the obligations of moral honesty, to pay his share of the expense, incurred for the joint advantage and benefit of both. And if he promise, he ought to pay accordingly.

The case of *Cooper* v. *Martin*, 4 *East* 76., was not cited at the bar, and is a strong case in support of the present action. It was a suit against a child for his maintenance and education, by a stepfather, founded on a promise to pay, *after* the defendant became of age. The court was of opinion that the stepfather was not obliged to maintain the child; and that maintaining the child was a good consideration for a promise when it is of age, to repay the expense of such maintenance. Lord *Ellenborough* says, " the plaintiff having *done* " *an act for the defendant* in his infancy, it is a good consi- " deration for his promise, after he came of age. In such a " case *the law will imply a request*, (by the defendant) and " the *fact* of the promise has been found by the jury." Justice *Lawrence* says, " the plaintiff having conferred the bene- " fit, *without any obligation*, it is a good consideration for the " promise by the defendant *after* he came of age."

We would remark, that what were the *motives* of the stepfather, seems never to have been thought of. Whether his conduct in maintaining the child, sprang from affection and complaisance to the mother, or from thoughtless generosity; whether it was the effect of disinterested virtue, or of a mer-

APPENDIX.

GREEVES
v
M'ALLISTER.

cenary and selfish spirit, seeking ultimately its own gain, are not hinted at in the case. The fact is, he had conferred a benefit, and the court looked no farther than to the benefit conferred by the plaintiff, and to the morality and honesty of the promise on the part of the defendant.

We are of opinion, a new trial ought not to be granted.

New trial refused.