CLARK and others administrators of BITTINGER *against* HERRING.

IN ERROR.

THIS was a writ of error to the Common Pleas of *York* county.

The defendant in error, who was plaintiff below, issued a summons in case against *Clark* and others surviving administrators of *Nicholas Bittinger* deceased; and counted against them in the following manner:

" *Philip Wendell Herring*, son and legatee of *Henry Her-*
" *ring* the elder, late &c., complains against *John Clark* &c.
" surviving administrators of *Nicholas Bittinger* deceased,
" *who was the surviving executor* of the last will and testa-
" ment of the said *Henry Herring* &c. for this, that the said
" *Henry Herring* the elder, in and by his last will and testa-
" ment in due form of law made &c., did give and bequeath
" unto his son *Philip Wendell Herring* his heirs and assigns,
" the sum of *forty pounds* lawful money of *Pennsylvania*,
" and also did order and direct in and by his said last will
ascertained money legacy; and the plaintiff may in the same count go for an unascertained residuary legacy.

*margin notes:*
1812.

BUCKMYER
*v.*
DUBS.

*Lancaster,*
*Monday,*
May 25.

Assets are a sufficient consideration for a *personal* promise by one who is executor, to pay a legacy, and to charge him *de bonis propriis.*

A moral or equitable obligation is sufficient consideration for an assumption.

Under the 6th section of the act of 21st of *March*, 1806, the damages in the declaration may be increased *on* the trial of the cause.

Assumpsit will lie for an

"and testament, that the remainder and residue of his es-
"tate if any, be equally divided between his three children,
"to wit, the said *Philip Wendell Herring,* &c. and of his
"said last will and testament did therein appoint the said
"*Nicholas Bittinger* and *Adam Peiffer* executors, as by the
"said will recorded, &c. appears, which said last will and
"testament, after the death of the said *Henry Herring,* was
"on the fourth day of *June* in the year &c. duly proved,
"and remains of record in the register's office &c. And the
"said *Philip Wendell Herring* avers, that the said *Nicholas
"Bittinger* and *Adam Peiffer,* the persons appointed execu-
"tors in the said will, on the day and year last aforesaid, at
"the county aforesaid, took upon themselves the burden of
"the execution of the said will, and became the executors
"thereof; and that afterwards to wit &c., the said *Adam
"Peiffer* died, by reason whereof the said *Nicholas* became
"sole executor of the said will; and that he, the said *Nicho-
"las,* afterwards, to wit &c. at the county aforesaid, *received
"into his hands and possession, goods, chattels and effects of
"the said Henry Herring the elder, not only sufficient to pay
"the debts, funeral expenses, and ascertained pecuniary
"legacies given and bequeathed by the said will, but also con-
"stituting a large balance, being the residue and remainder
"of the said estate of the said Henry Herring the elder, be-
"queathed by his said will to his said three children to be equal-
"ly divided among them, amounting to the sum of four hundred
"and ten pounds nineteen shillings and sixpence;* by reason
"whereof, and by force of the act of assembly &c., he, the
"said *Nicholas,* surviving *executor as aforesaid,* in his life
"time, to wit, on the first day of *May* in the year &c.
"at the county aforesaid, became liable to pay unto the said
"*Philip Wendell Herring* the said forty pounds, and one
"third part of the said four hundred and ten pounds, nine-
"teen shillings and sixpence, and so being liable, he the
"said *Nicholas,* then and there, in consideration thereof
"undertook, and faithfully promised the said *Philip Wendell
"Herring,* that he the said *Nicholas,* would well and faith-
"fully pay the said *Philip Wendell Herring* the said several
"sums of money when he should be thereto lawfully re-
"quired. Nevertheless the said *Nicholas* in his lifetime, and
"his administrators aforesaid since his death, have not &c."

The defendants pleaded *payment*, on which issue was joined; and on the day when the cause was tried, though whether before or after the jury was sworn, the record did not set forth, the Common Pleas permitted the declaration to be amended, by increasing the damages from 600 to 900 dollars. The jury found a verdict for the plaintiff, damages 720 dollars 57 cents, and judgment was rendered *de bonis* of *Bittinger.*

The errors assigned in this court, were

1. The permission to amend on the trial of the cause.

2. That an action of *assumpsit* was not a proper action to recover a specific money legacy. It should have been *debt.*

3. That the promise declared upon, was a personal promise by the executor, in consideration of assets; whereas the promise could only be co-extensive with the consideration, namely as executor, and would not charge him *de bonis propriis.*

*C. Smith* and *Duncan* for the plaintiffs in error.

*Hopkins* for the defendant in error.

TILGHMAN C. J. This is an action on the case, founded on an assumption by *Nicholas Bittinger* deceased, who was surviving executor of *Henry Herring* deceased, to pay to *Philip W. Herring* a legacy bequeathed to him by the will of his father the said *Henry Herring.* The declaration alleges, that before the making of the assumption, assets sufficient to pay all the debts and legacies of the said *Henry Herring* had come to the hands of *Nicholas Bittinger.* The defendant pleaded *payment*, with leave to give the special matter in evidence, whereupon issue was joined. On the trial of the cause, the court permitted the plaintiff to amend the declaration by increasing the sum laid for damages, although the defendant's counsel objected to it. The counsel for the plaintiffs in error (who were defendants below) assigned several errors, but in their argument relied upon two. 1. The allowance of the amendment of the declaration without costs. 2. The entry of a judgment against the defendant *de bonis propriis.*

1. The amendment was allowed by virtue of the sixth sec-

.tion of the act to regulate arbitrations and proceedings in courts of justice, passed the 21st of *March* 1806. By this act, the court are authorised to permit amendments . *before* the trial, or *on* the trial, where it appears to them that the merits of the case require it. But if such amendment puts the adverse party to inconvenience, or takes him by surprise, the cause is to be continued to the next court. The defendant did not pretend that he was taken by surprise, or put to inconvenience; indeed it was impossible that such should have been the case. The defence remained the same after the amendment as before. The plea of payment was relied on, which confessed the assumption. The only object of the amendment was, to enable the plaintiff to recover as much as should appear to be due to him. As to costs, the act does not say that they shall be given in all cases. The defendant asked no costs, but contented himself with objecting to the amendment. There does not appear to me therefore to be any weight in this point.

2. The defendants are sued, not as representing *Henry Herring*, but as administrators of *Nicholas Bittinger*, who was executor of *Herring*, on his personal promise to pay the legacy. *Bittinger* had received assets sufficient to pay all debts and legacies, and this legacy might have been recovered against him, by virtue of the act " for the more easy reco- " very of legacies," passed the 21st of *March* 1772. This is not denied; but it is said that being liable only *as executor*, his promise was co-extensive with his liability, and therefore only bound him to answer as *executor;* that as a promise to bind him *personally*, it was *void* for want of consideration. This argument has been very warmly pressed. But after attentive consideration, I do not think it sound. An executor who has assets in hand, is bound, is under a *moral* obligation, and in this commonwealth he is under a *legal* obligation, to pay a legacy. But a moral obligation alone is sufficient consideration for an assumption. Without doubt a promise to pay a debt barred by the statute of limitations is binding; and why? because no honest man would refuse to pay it. If an infant contracts a just debt, although not for necessaries, and after arriving at full age, promises to pay it, he is bound by his promise; and yet he could not have been compelled to pay it. But where a man promises to pay

what may be recovered against him by law, the argument is *à fortiori*. There is no need of deciding at present, whether an action for a legacy under our act of assembly may not be supported against an executor personally. But suppose it brought against him *as executor*, and judgment against him as executor, assets having been proved to have come to his hands. In that case, the execution will go against the goods of the testator, but if no goods are found, the executors will ultimately be *personally* liable. But this roundabout way of coming at an executor who has been guilty of a devastavit, would be extremely inconvenient to the legatee. The executor has the funds in his hands, and knows them better than any body else. It is his duty to make payment out of those funds. Why then may he not bind himself personally? I confess I can see no reason. He may, if he please, restrict his promise, so as to avoid personal responsibility. But we must take it that in this case there was no restriction. The declaration alleges a general promise. If an executor making a promise of this kind, was deprived of any legal defence by being subject to an action in his personal capacity, I should pause before I sanctioned the action. But that is not the case. The receipt of assets is the ground on which the assumption stands; this must be averred in the declaration, and may be contested by the defendant, and if a want of assets is proved, the promise fails for want of consideration.

I have thus far considered the matter upon principle. Let us now see how far this principle is supported by authority. In the case of *Trewinian* v. *Howell, Cro. El.* 91., it was decided that assets in the hands of the executor, made a good consideration for his *personal promise* to pay a debt of the testator, and judgment was entered against the executor *de bonis propriis*. In 1 *Vez.* 125., *Reech* v. *Kennegal*, Lord *Hardwicke* thus expresses himself: " At law if an executor " promises to pay the debt of his testator, a consideration " must be alleged, *as of assets come to his hands*, or forbear-" ance; or if admission of assets is implied by the promise, " otherwise it will be *nudum pactum*, and not personally "binding on the executor." In *Atkins and wife* v. *Hill, Cowper* 284 (*A. D.* 1775), the very point now in question was decided on demurrer and full argument. In *Hughes* v. *Rann* it was decided by the Court of King's Bench (A. D.

1812.
————
CLARK
*v.*
HERRING.

1774) that an executor was liable to an action on his personal assumption to pay a debt of his testator, and judgment was entered *de bonis propriis*. There is an act of assembly of this state, which prohibits the citing of *British* precedents or adjudications subsequent to the 4th of *July* 1776, excepting in questions depending on the marine law or the law of nations. But this case of *Hughes* v. *Rann* must, from its nature, form an exception from the general rule intended to be established by the act of assembly, because, although it was decided by the Court of King's Bench in 1774, yet that judgment was reversed in the exchequer chamber, *Michaelmas* 1776, and that reversal affirmed in the House of Lords in 1778. It is, I presume, on the ultimate decision of this case, that the plaintiffs in error rely. In order therefore to understand it fully, we must get all the information that can be collected from the *English* books. Now it is said by Lord *Mansfield* in the case of *Hawkes and wife* v. *Saunders*, *Cowper* 291., that in *Hughes* v. *Rann* there were no assets, nor any averment of assets stated in the declaration. And it appears by a note in 7 Term Reports 350., in which the same case is reported, that one of the defendant's pleas was *plene administravit*, which was found *for him*, so that it appeared on the face of the record, that there was a deficiency of assets. This circumstance makes a striking difference between that case and the one we are now to decide. But if it be objected, that the Lord Chief Baron *Skinner*, in delivering the opinion of the judges in the House of Lords, goes the whole length of the principle now contended for by the plaintiffs in error, I answer, that although I have thought it proper to trace that case to its conclusion, yet no adjudication of a *British* court since the 4th of *July* 1776 is an authority here, and in my opinion, the ground taken by Lord *Mansfield* and Justice *Buller* is too strong to be shaken; that is to say, that a *moral* or *equitable* obligation is a sufficient consideration for an assumption. I am therefore for affirming the judgment.

YEATES J. The first error assigned on these records, is, that an action on the case will not lie for an ascertained pecuniary legacy, under the act of assembly of the 21st of *May* 1772. No cases were cited to prove this position; and

it is manifest that the act contemplated no change of the law in this particular. It is true, that an action of debt can only be maintained by a demand for a sum certain; but it is not correct to say that case will not also lie for an ascertained sum. On the contrary, it is clear that assumpsit will lie in many cases where debt lies, and in many where it does not lie; and that a main inducement originally for encouraging actions of assumpsit was, to take away the wager of law. 2 *Burr*. 1008. Where one is bound in an obligation, and afterwards promises to pay the money, assumpsit will lie on this promise. *Cro. El.* 240., *Cro. Car.* 343.

If assumpsit would be a proper form of action for the recovery of the legacies of 40*l.* each, there can be no misjoinder of actions, in including the demands of the plaintiffs below, for their respective third parts of the residue of 410*l.* 9*s.* 6*d.*, which is the second ground of error assigned.

But the great objection is, that the declarations are not sufficient in point of law to support the judgments entered thereon (*a*). They are the same in substance in each suit, varying only in the names of the plaintiffs below. The declaration states the bequests by the last will of *Henry Herring* senior, the nomination of the said *Nicholas Bittinger* and *Adam Peiffer* as his executors, that they proved the will and took upon themselves the burthen of the execution thereof, that the said *Nicholas* survived the said *Adam*, and that the former afterwards received into his hands and possession, goods, chattels and effects, not only sufficient to discharge the debts, funeral expenses, and ascertained pecuniary legacies given by the will, but also constituting a large balance of 410*l.* 9*s.* 6*d.* By reason whereof, and by force of the act of assembly, he the said *Nicholas*, surviving executor as aforesaid, in his life time became liable to pay the said legacies; and so being liable, he the said *Nicholas*, promised to pay the said sums of money when &c. Nevertheless, &c. The form of this declaration is professed to have been taken from *Atkins et uxor* v. *Hill*, determined in *May* 1775, *Cowp.* 284., though it varies somewhat therefrom.

(*a*) There was, besides the case here reported, a suit by the executors of *Henry Herring* junior, against the same defendants, in which, except the question of amendment, the same points occurred, and were argued by the same counsel. One decision of course settled both.

1812.
———
CLARK
*v.*
HERRING.

The defendants below pleaded payment to the two actions, which admits all the substantial facts laid in the declaration; viz. the gift by will, the executors taking upon themselves the trust, the sufficiency of assets which came to the hands of the surviving executor, his liability to pay the sums demanded, and his *personal* promise to pay the same; and this admission is further confirmed by the finding of the jury. A demurrer to the declaration would not produce a stronger effect. If in consequence of the course of pleading, the defendants below have been precluded from going into the real merits of the case so fully as they might otherwise have done, it may be a cause of regret to us, but as a court of error we cannot remedy the evil. They should have changed their plea before trial, under the leave reserved to themselves, to add or alter. The suit falls within the principles laid down in the case cited (*Cowp.* 288). The defendants have admitted, that *Nicholas Bittinger* had sufficient assets to pay these legacies; and it is the case of a promise made upon a good and valuable consideration, which in all cases is a sufficient ground to support an action. I forbear mentioning particularly the case of *Hawkes et ux.* v. *Saunders* in the same book page 289, cited through oversight by the counsel for the defendant in error, the same having been determined *January* 28, 1782, and inserted in the book out of the order of time.

The counsel for the plaintiff in error, have placed much reliance on the notes of *Williams,* subjoined to 1 *Saund.* 210, (note 1,) and 2 *Saund.* 137, (note 2). He cites the case of *Rann* v. *Hughes,* wherein it was ultimately determined that a bare promise to pay by the executor, does not make him liable to answer out of his own estate, but he is still chargeable only as executor, and to the extent of the assets in his hands, in the same manner as he would have been, had no such promise been made. That action was brought in *B. R.* to *Hilary Term* 1774, and judgment was entered for the plaintiff in *Michaelmas Term* 1774, which was afterwards reversed in the Exchequer Chamber, *Michaelmas* (*November*) 1776, and the judgment of reversal affirmed in the House of Lords in *May* 1778. Without attempting to reconcile the system of reasoning of Lord Chief Baron *Skinner,* who delivered the opinion of the judges in the House of Lords, with that

of the Court of *B. R.* in *Atkins et uxor* v. *Hill,* it is sufficient to observe, that the jury found that *Isabella Hughes* the defendant, had fully administered, except as to certain goods, &c., which were not sufficient to pay an outstanding bond debt of the intestate's. Here the plea and verdict establish that *Nicholas Bittinger* had not fully administered; and that at the time of making the promise, he had sufficient assets in his hands to pay the funeral expenses, debts and legacies of the testator. And the case in *Cowp.* 284., is the last case that we know of, decided in the *English* books on this subject. *Talliaferro* v. *Robb* (2 *Call.* 263.,) was determined in 1800 in the Court of Appeals of *Virginia,* on the same principles.

One further supposed error remains to be considered, which is confined to the action of *Philip Wendell Herring* in the court below. It is objected that on the 7th of *April* 1808, (the day of trial) the court, on motion, permitted the damages in the declaration to be increased from 600 to 900 dollars, though the defendant's counsel objected thereto; and that the case of *Thompson* v. *Musser,* 1 *Dall.* 464., shews this to be error. It does not distinctly appear by the record, whether this amendment took place before or after the jury were sworn. But admit that it was done during the trial of the cause. By section sixth of the act of the 21st of *March* 1806, "the plaintiff may be permitted to amend his declaration or "statement, and the defendant may alter his plea or defence, "*on or before* the trial of the cause; and if by such alteration "or amendment, the adverse party is taken by surprise, the "trial shall be postponed until the next court." The court therefore had the unquestionable power of directing the amendment, and must necessarily have had the right of judging, whether it would effect any surprise. The amendment introduced no new merits into the case. The quantum of the demand, if any thing was due, was to be ascertained by the jury; and the defence would be precisely the same, whether the damages were laid at 600 or 900 dollars. Besides, though the plaintiffs in error have disagreed to the alteration, they did not ask for an imparlance. They also moved for a new trial, which was overruled. On such motions, the court takes every equitable circumstance into view, in order to do complete justice to the parties.

1812.        On the whole, I am of opinion, that the judgment of the
_____    Court of Common Pleas be affirmed.
CLARK
v.
HERRING.    BRACKENRIDGE J. Different causes of action may be
joined, where the process, the plea, and the judgment are the
same; though not in all cases, as trespass *vi et armis*, and
case. 1 *Tidd.* 11. I am not prepared to go into a considera-
tion of this rule, and the reason on which it is founded; but
so the rule is. There is one reason that is obvious to com-
mon sense, which is, *the easier and more perfect investiga-
tion of matters taken singly*, and brought before a court and
jury, than where perplexed, being multifold, and of a diffe-
rent nature. But I do not know that this reason is ever given.
The fine payable on the purchase of the writ, being different
in different kinds of process, is mentioned. With us, that
reason does not hold; and though we have the proverb, *the
old six and eight pence*, we have not the thing itself, *the
fine payable* in some cases.

The right to a legacy does not arise *ex contractu;* and *in-
debitatus* assumpsit would not lie for it; for there can be no
debt express or implied, to be considered as incurred. It
could not be detinue unless a specific article was demanded,
such as a diamond, &c. But by the act of assembly of the
21st of *March* 1772, case, debt, detinue, or account render,
may be brought *as the case may require.* Here it would be
debt for the 40*l.*, and assumpsit for the distributive share.
Multiplicity of actions are to be avoided, and to avoid two
actions, it requires *case* here. If a different judgment be-
came necessary, the declaration being against the defendant
in different capacities, personal in one case, and representa-
tive in the other, the causes of action could not be joined.
But the same judgment here, is called for in the case of the
legacy of 40*l.*, and the distributive share of one third of the
assets over and above.

The principal question in the case, is, whether the judg-
ment, in this declaration, can be against the defendant *in a
personal capacity.*

The preamble or introductory part of the declaration is
against the defendant in his *representative* capacity. But it
is alleged, that, after stating his capacity of executor, and
the consideration of assets come to hand, and his assumption

to pay, it is not laid, that, *as executor* he assumed. But the assumpsit cannot but be understood as relating to the capacity in which, according to the declaration, he was requested to pay, *and that was as executor*. The writ was against him as executor, and a declaration cannot fairly be considered but as an amplification of the writ; and there is no special consideration, as forbearance of suit, or otherwise, alleged, to ground an action *in a personal capacity*. The judgment ought to have been *de bonis testatoris*.

As to the amendment in one of the cases, of enlarging the damages laid in the declaration, to accord with the verdict, it is merely for the sake of technical consistency. The verdict may be for less than are laid; and why not for more, and the judgment good? The amendment could only be for the sake of form, and in the power of the court to allow, and so not error. Damages are released where beyond the declaration; but it accords more with justice to increase the damages as laid, and I do not see what there is to oppose it. *I think common sense, in these cases, a better guide than precedent.*

Judgment affirmed.