## DANIEL MILLS *versus* SETH WYMAN.

The general position, that a moral obligation is a sufficient consideration for an express promise, is to be limited in its application, to cases where a good or valuable consideration has once existed.

Thus, where a son, who was of full age and had ceased to be a member of his father's family, was suddenly taken sick among strangers, and, being poor and in distress, was relieved by the plaintiff, and afterwards the father wrote to the plaintiff promising to pay him the expenses incurred, it was *held*, that such promise would not sustain an action.

THIS was an action of *assumpsit* brought to recover a compensation for the board, nursing, &c., of Levi Wyman, son of the defendant, from the 5th to the 20th of February, 1821. The plaintiff then lived at Hartford, in Connecticut; the defendant, at Shrewsbury, in this county. Levi Wyman, at the time when the services were rendered, was about 25 years of age, and had long ceased to be a member of his father's family. He was on his return from a voyage at sea, and being suddenly taken sick at Hartford, and being poor and in distress, was relieved by the plaintiff in the manner and to the extent above stated. On the 24th of February, after all the expenses had been incurred, the defendant wrote a letter to the plaintiff, promising to pay him such expenses. There was no consideration for this promise, except what grew out of the relation which subsisted between Levi Wyman and the defendant, and *Howe* J., before whom the cause was tried in the Court of Common Pleas, thinking this not sufficient to support the action, directed a nonsuit. To this direction the plaintiff filed exceptions.

*J. Davis* and *Allen* in support of the exceptions. The moral obligation of a parent to support his child is a sufficient consideration for an express promise. *Andover &c. Turnpike Corp.* v. *Gould*, 6 Mass. R. 40; *Andover* v. *Salem*, 3 Mass. R. 438; *Davenport* v. *Mason*, 15 Mass. R. 94; 1 Bl. Comm. 446; Reeve's Dom. Rel. 283. The arbitrary rule of law, fixing the age of twenty-one years for the period of emancipation, does not interfere with this moral obligation, in case a child of full age shall be unable to support himself. Our statute of 1793, *c*. 59, requiring the kindred of a poor

Mills
*v.*
·Wyman.

person to support him, proceeds upon the ground of a moral obligation.

But if there was no moral obligation on the part of the defendant, it is sufficient that his promise was in writing, and was made deliberately, with a knowledge of all the circumstances A man has a right to give away his property. [*Parker* C. J. There is a distinction between giving and promising.] The case of *Bowers* v. *Hurd,* 10 Mass. R. 427, does not take that distinction. [*Parker* C. J. That case has been doubted.] Neither does the case of *Packard* v. *Richardson,* 17 Mass. R. 122 ; and in this last case (*p.* 130) the want of consideration is treated as a technical objection.

*Brigham,* for the defendant, furnished in vacation a written argument, in which he cited *Fowler* v. *Shearer,* 7 Mass. R. 22 ; *Rann* v. *Hughes,* 7 T. R. 350, note ; *Jones* v. *Ashburnham,* 4 East, 463 ; *Pearson* v. *Pearson,* 7 Johns. R. 26 ; *Schoonmaker* v. *Roosa,* 17 Johns. R. 301 ; the note to *Wennall* v. *Adney,* 3 Bos. & Pul. 249 ; *Fink* v. *Cox,* 18 Johns. R. 145 ; *Barnes* v. *Hedley,* 2 Taunt. 184 ; *Lee* v. *Muggeridge,* 5 Taunt. 36. He said the case of *Bowers* v. *Hurd* was upon a promissory note, where the receipt of value is acknowledged ; which is a privileged contract. *Livingston* v. *Hastie,* 2 Caines's R. 246 ; *Bishop* v. *Young,* 2 Bos. & Pul. 79, 80 ; *Pillans* v. *Mierop,* 3 Burr. 1670 ; 1 Wms's Saund 211, note 2.

The opinion of the Court was read, as drawn up by

*April term*
1826.

209

PARKER C. J. General rules of law established for the protection and security of honest and fair-minded men, who may inconsiderately make promises without any equivalent, will sometimes screen men of a different character from engagements which they are bound in *foro conscientiæ* to perform. This is a defect inherent in all human systems of legislation. The rule that a mere verbal promise, without any consideration, cannot be enforced by action, is universal in its application, and cannot be departed from to suit particular cases in which a refusal to perform such a promise may be disgraceful.

The promise declared on in this case appears to have been made without any legal consideration. The kindness and services towards the sick son of the defendant were not bestowed

at his request. The son was in no respect under the care of the defendant. He was twenty-five years old, and had long left his father's family. On his return from a foreign country, he fell sick among strangers, and the plaintiff acted the part of the good Samaritan, giving him shelter and comfort until he died. The defendant, his father, on being informed of this event, influenced by a transient feeling of gratitude, promises in writing to pay the plaintiff for the expenses he had incurred. But he has determined to break this promise, and is willing to have his case appear on record as a strong example of particular injustice sometimes necessarily resulting from the operation of general rules.

It is said a moral obligation is a sufficient consideration to support an express promise ; and some authorities lay down the rule thus broadly ; but upon examination of the cases we are satisfied that the universality of the rule cannot be supported, and that there must have been some preëxisting obligation, which has become inoperative by positive law, to form a basis for an effective promise. The cases of debts barred by the statute of limitations, of debts incurred by infants, of debts of bankrupts, are generally put for illustration of the rule. Ex press promises founded on such preëxisting equitable obligations may be enforced ; there is a good consideration for them : they merely remove an impediment created by law to the recovery of debts honestly due, but which public policy protects the debtors from being compelled to pay. In all these cases there was originally a *quid pro quo ;* and according to the principles of natural justice the party receiving ought to pay ; but the legislature has said he shall not be coerced ; then comes the promise to pay the debt that is barred, the promise of the man to pay the debt of the infant, of the discharged bankrupt to restore to his creditor what by the law he had lost. In all these cases there is a moral obligation founded upon an antecedent valuable consideration. These promises therefore have a sound legal basis. They are not promises to pay something for nothing ; not naked pacts ; but the voluntary revival or creation of obligation which before existed in natural law, but which had been dispensed with, not for the benefit of the party obliged solely, but principally for the public convenience

Mills
*v.*
Wyman.

210

If moral obligation, in its fullest sense, is a good substratum for an express promise, it is not easy to perceive why it is not equally good to support an implied promise. What a man ought to do, generally he ought to be made to do, whether he promise or refuse. But the law of society has left most of such obligations to the *interior* forum, as the tribunal of conscience has been aptly called. Is there not a moral obligation upon every son who has become affluent by means of the education and advantages bestowed upon him by his father, to relieve that father from pecuniary embarrassment, to promote his comfort and happiness, and even to share with him his riches, if thereby he will be made happy ? And yet such a son may, with impunity, leave such a father in any degree of penury above that which will expose the community in which he dwells, to the danger of being obliged to preserve him from absolute want. Is not a wealthy father under strong moral obligation to advance the interest of an obedient, well disposed son, to furnish him with the means of acquiring and maintaining a becoming rank in life, to rescue him from the horrors of debt incurred by misfortune ? Yet the law will uphold him in any degree of parsimony, short of that which would reduce his son to the necessity of seeking public charity.

Without doubt there are great interests of society which justify withholding the coercive arm of the law from these duties of imperfect obligation, as they are called ; imperfect, not because they are less binding upon the conscience than those which are called perfect, but because the wisdom of the social law does not impose sanctions upon them.

A deliberate promise, in writing, made freely and without any mistake, one which may lead the party to whom it is made into contracts and expenses, cannot be broken without a violation of moral duty. But if there was nothing paid or promised for it, the law, perhaps wisely, leaves the execution of it to the conscience of him who makes it. It is only when the party making the promise gains something, or he to whom it is made loses something, that the law gives the promise validity. And in the case of the promise of the adult to pay the debt of the infant, of the debtor discharged by the statute of lim

tations or bankruptcy, the principle is preserved by looking back to the origin of the transaction, where an equivalent is to be found An exact equivalent is not required by the law ; for there being a consideration, the parties are left to estimate its value : though here the courts of equity will step in to relieve from gross inadequacy between the consideration and the promise.

These principles are deduced from the general current of decided cases upon the subject, as well as from the known maxims of the common law. The general position, that moral obligation is a sufficient consideration for an express promise, is to be limited in its application, to cases where at some time or other a good or valuable consideration has existed.[1]

A legal obligation is always a sufficient consideration to support either an express or an implied promise ; such as an infant's debt for necessaries, or a father's promise to pay for the support and education of his minor children. But when the child shall have attained to manhood, and shall have become his own agent in the world's business, the debts he incurs, whatever may be their nature, create no obligation upon the father ; and it seems to follow, that his promise founded upon such a debt has no legally binding force.

The cases of instruments under seal and certain mercantile contracts, in which considerations need not be proved, do not contradict the principles above suggested. The first import a consideration in themselves, and the second belong to a **212** branch of the mercantile law, which has found it necessary to disregard the point of consideration in respect to instruments

---

[1] *Cook* v. *Bradley*, 7 Connect. R. 57; *Littlefield* v. *Shee*, 2 Barnw. & Adol. 811 ; Yelv. (Metcalf's ed.) 4 *a*, note 1; *Parker* v. *Carter*, 4 Munf. 273 ; *M'Pherson* v. *Rees*, 2 Penrose & Watts, 521 ; *Pennington* v. *Gittings*, 2 Gill & Johns. 208 ; *Smith* v. *Ware*, 13 Johns. R. 259; *Edwards* v. *Davis*, 16 Johns. R. 281, 283, note ; *Greeves* v. *M'Allister*, 2 Binn. 591 ; *Chandler* v. *Hill*, 2 Hen. & Munf. 124 ; Fonbl. on Eq. by Laussat, 273, note ; 2 Kent's Comm. (2nd ed.) 465.

*Contra*, *Glass* v. *Beach*, 5 Vermont R. 172; *Barlow* v. *Smith*, 4 Vermont R. 144; *Commissioners of the Canal Fund* v. *Perry*, 5 Ohio R. 58.

See also *Seago* v. *Deane*, 4 Bingh. 459; *Welles* v. *Horton*, 2 Carr. & Payne, 383 ; *Davis* v. *Morgan*, 6 Dowl. & Ryl. 42.

negotiable in their nature and essential to the interests of com merce.

Instead of citing a multiplicity of cases to support the positions I have .alen, I will only refer to a very able review of all the cases in the note in 3 Bos. & Pul. 249. The opinions of the judges had been variant for a long course of years upon this subject, but there seems to be no case in which it was nakedly decided, that a promise to pay the debt of a son of full age, not living with his father, though the debt were incurred by sickness which ended in the death of the son, without a previous request by the father proved or presumed, could be enforced by action.

It has been attempted to show a legal obligation on the part of the defendant by virtue of our statute, which compels lineal kindred in the ascending or descending line to support such of their poor relations as are likely to become chargeable to the town where they have their settlement. But it is a sufficient answer to this position, that such legal obligation does not exist except in the very cases provided for in the statute, and never until the party charged has been adjudged to be of sufficient ability thereto. We do not know from the report any of the facts which are necessary to create such an obligation. Whether the deceased had a legal settlement in this commonwealth at the time of his death, whether he was likely to become chargeable had he lived, whether the defendant was of sufficient ability, are essential facts to be adjudicated by the court to which is given jurisdiction on this subject. The legal liability does not arise until these facts have all been ascertained by judgment, after hearing the party intended to be charged.[1]

For the foregoing reasons we are all of opinion that the nonsuit directed by the Court of Common Pleas was right, and that judgment be entered thereon for costs for the defend ant.

---

[1] See *Cook* v. *Bradley,* 7 Connect. R. 57; *Wethersfield* v. *Montague,* 3 Connect. R. 507; *Dover* v. *M'Murphy,* 4 N. Hamp. R. 158