GEORGE M'CULLOCH *against* JOHN SAMPLE and NANCY SAMPLE, executors of FRANCIS SAMPLE, deceased.

Executors who were authorized to sell the real estate of their testator, for the payment of certain legacies, sold the same, and afterwards settled their account in the Orphans' Court, by which it appeared there were assets to pay the legacies: the legatees afterwards filed refunding bonds, and brought suits against them as executors, and obtained judgments: *Held,* That such judgments are not liens on the real estate of the executor.

ERROR to the Common Pleas of Mifflin county.

This was an issue directed by the court, in pursuance of the act of assembly, to try the right to money in the hands of *George M'Culloch,* Esquire, sheriff, which was made out of the sale of the real estate of *Francis Sample,* deceased.

The property was sold for three thousand three hundred and fifty dollars, and after the payment of a judgment of the *Huntingdon Bank,* v. *Francis Sample,* and the costs of sale, there remained five hundred and twenty-eight dollars and eighteen cents in the hands of the sheriff, which was claimed by the plaintiffs below as the executors of *Francis Sample,* deceased, as whose property the land was sold, on the ground that there was no lien upon the property payable out of the proceeds of sale, except that of the *Huntingdon Bank.*

*David Cummins, Charles Cummins* and *William Cummins* claimed the money on the following grounds. *David Sample* died, having first made a will and testament, by which he appointed *Francis Sample* and *David Sample,* his sons, to be his executors, and authorised them to sell his real estate, and *inter alia* bequeathed certain legacies to his grand children, the said *David Cummins, Charles Cummins* and *William Cummins.* The said executors sold the real estate of their testator in 1801, and in 1806, settled an administration account, by which it appeared there was a large balance in their hands. In 1819, *David, Charles* and *William Cummins,* each filed refunding bonds, and brought suit against *Francis Sample* and *David Sample,* executors of *David Sample,* deceased, to recover their legacies under the will of their grandfather; and on the 11th December, 1819, each obtained a judgment for two hundred and sixty-nine dollars and twenty-three cents, and each issued a *fieri facias* to November term, 1820, against the estate of *David Sample,* deceased, which were returned "not executed," and *alias fieri facias* were issued in 1823, and were returned "*nulla bona.*"

*David, Charles* and *William Cummins,* in the court below contended, that these three judgments were liens on the estate of *Francis Sample,* under the act of 21st March, 1772. And secondly. If they were not, the court would, in the exercise of their equita-

(George M'Culloch *v.* John Sample and Nancy Sample, executors of Francis Sample, deceased.)

ble powers, decree the money to them, under the special circumstances of this case.

But the court, (*Burnside*, president,) being of a different opinion, instructed the jury, that the executors of *Francis Sample*, were entitled to the money in the hands of the sheriff, after the payment of the bank judgment; and they found accordingly.

*Potter*, for plaintiff in error. When assests come to the hands of an executor, he is personally liable to a creditor or legatee of the estate. In this case the claim was not made against the estate of *David Sample*, deceased; for his whole real and personal estate, by the direction of his will, had long before been converted into money by his executors, which remained in their hands and for which they were liable; and did charge themselves in the settlement of their administration account.

By the 3d section of the act of 21st March, 1772, *Purd. Dig.* 517, it is provided, that when there is a plea of no assets by an executor certain proceedings shall take place, by which the amount of the assets shall be ascertained: judgment shall then be entered *to remain as security;* it is reasonable that this security shall be against the estate of the executor, who gives no bail; and particularly in this case where there was no estate of the testator, which could have been secured by the judgment: here the executors admitted by their settlement in 1806, that the assets were in their hands, upon which our judgment was obtained. On this point were cited *Wilson* v. *Wilson,* 3 *Bin.* 557. *Isett* v. *Brenizer,* MS., Chambersburg, October term, 1828.

A judgment generally against an executor is personal. *Griffith* v. *Chew,* 8 *Serg. & Rawle,* 17.

*Fisher* and *Hale*, for defendants in error. It would be contrary to legal principles, that when an executor is sued in his representative capacity, declared against as such, and judgment on that declaration, that that judgment should bind him personally. Executors, by a proper proceeding against them, may be made personally liable, but that proceeding has not been pursued in this case. *Commonwealth* v. *Rham,* 2 *Serg. & Rawle,* 375. *Guire* v. *Kelly,* 2 *Bin.* 294. *Clark* v. *Herring,* 5 *Bin.* 33. In *Wilson* y. *Wilson,* the declaration was against the executor personally.

*Potter*, in reply. A proceeding to prove a *devastavit* can only be instituted by a creditor, and not by a legatee: but why should either one or the other institute a proceeding to ascertain that which the executors always admitted and put on record by the settlement of their accounts.

The opinion of the court was delivered by

ROGERS, J.—Whether an action for a legacy may not be supported, under the implied promise to pay, arising from the conside-

(George M'Culloch *v.* John Sample and Nancy Sample, executors of Francis Sample, deceased.)

ration of assets, it is unnecessary to decide. In *Clark* v. *Herring*, 5 *Bin.* 33, it was ruled, "that assets are a sufficient consideration for a personal promise by one who is executor, to pay a legacy and charge him *de bonis propriis*. And in *Isett* v. *Brenizer*, it would seem to have been the opinion of the court, that an action may be maintained against an executor, personally, on a promise implied, from the consideration of indebtedness. However this may be, the legatee may elect to bring suit against him in his representative character, and this it is believed is the usual form; in which case the judgment is *de bonis testatoris*, and not *de bonis propriis*. And in this I do not agree with the reasoning of the chief justice in *Isett* v. *Brenizer.* The legatees brought this suit against, *Francis* and *David Sample*, as executors of *David Sample*, deceased. The cause was referred, and the arbitrators awarded generally in favour of the plaintiff. As there was no declaration or statement filed, the judgment follows the nature of the writ, and is a judgment against them in their representative, and not their personal character. The *fi. fa.* pursues the judgment, and in short there is nothing on the record which indicates any intention of considering the executors personally liable for the debt. On the contrary, no person, who might search the docket for incumbrances, would for a moment have supposed, that the judgment bound the individual property of the executors. *Wilson* v. *Wilson*, 3 *Bin.* was a suit for a distributive share, in which the writ, and the recital in the declaration, was against the defendant as executor, but the count was on a promise in his individual character. And this constitutes the difference between the cases; for it was the count which controlled the writ, and rendered *Wilson* personally liable on the judgment. It could not have been pretended that he would have been personally bound, independently of the declaration, and that by virtue of the count, in which he is charged individually. Had the plaintiffs filed a declaration or statement, with the proper averments, as in *Wilson* v. *Wilson*, there would have been room for the argument, that his being stated to be executor, should be rejected as surplusage. As the defendants were sued as executors, judgment recovered against them as executors, and execution was issued against them in the same capacity; we are of the opinion this judgment should be affirmed.

Judgment affirmed.