## COURT OF APPEALS.

JOSEPH GOULDING, appellant agt. ELIZABETH W. DAVIDSON, respondent.

Where a *married woman* purchases goods on her own account and on her own credit and responsibility—she being at the time a trader doing business in her own name and for her own personal benefit and advantage, and contrary to the fact, holding herself out as an unmarried woman, and the vendor of the goods being ignorant of her marriage, the *debt* created by such purchase does not become the *debt of the husband.*

The *moral and equitable obligation* resting upon the wife to pay such debt is a sufficient consideration to support an *express promise* to pay it, made after she became sole by the death of her husband; and on such promise she is legally liable.

*March Term*, 1863.

THIS is an action brought by the assignee of the vendors of certain goods and merchandise sold by them to the defendant, to recover the value thereof. The goods were sold and delivered to her, as averred in the complaint, at her request, and solely on her credit and responsibility, she being then a trader doing business in her own name and for her own personal benefit and advantage, and holding herself out to be an unmarried woman, but that, in fact, at the time of making said contract, she was in truth a married woman, although the plaintiff's assigns were ignorant thereof. But that, after the death of her said alleged husband, and she being then sole, in consideration of the premises and of the moral obligation resting upon her to pay for the said goods and merchandises, she undertook and promised to pay for the same.

To this complaint the defendant demurs on the ground that it does not contain facts sufficient to constitute a cause of action.

Judgment was given for defendant on the demurrer, at special term, which was affirmed at general term, and the plaintiff now appeals to this court.

Goulding agt. Davidson.

A. BOARDMAN, *for appellant.*

J. H. REYNOLDS, *for respondent.*

DAVIES, J.   A natural or moral obligation is one which cannot be enforced by action, but which is binding on the party who incurs it, in conscience and according to natural justice, (2 *Bouv.*, 200;) and the instance of such an obligation is given as when the action upon the contract is barred by the statute of limitations,. a natural or moral obligation still subsists, although the civil obligation is extinguished.   A natural obligation is a sufficient consideration for a new promise. (5 *Binn.*, 33 ; 2 *Binn.*, 591; *Yelv.*, 41, *a. n.* 1 ;   *Cow.*, 289 ;   2 *Bl. Com.*, 445 ;   3 *B. & P.*, 249, *n.* ; 2 *East.*, 506 ; 3 *Taun.*, 311; 5 *Taun.*, 36 ; *Yelv.*, 41–6, *n.* ; 3 *Pick.*, 207, *and other cases hereinafter referred to.*)

The very able note to *Wennall* agt. *Adney*, (3 *Bos. & P.*, 249,) contains a review of all the cases, and a criticism upon the decisions of Lord MANSFIELD; and the writer says that the instances adduced by him as illustrative of the rule of law do not carry that rule beyond what the older authorities seem to recognize as its proper limits ; for in each instance the party bound by the promise had received a benefit previous to the promise.   Indeed, it is said, it seems that in such instances alone will an express promise have any operation, and there it only becomes necessary, because, though the consideration were originally beneficial to the party promising, yet inasmuch as he were not of a capacity to bind himself when he received the benefit, or is protected from liability by some statute provision, or some stubborn rule of law, the law will not, as in ordinary cases, imply an assumpsit against him. Again : it is remarkable that Lord MANSFIELD appears to have used the term " moral obligation," not as expressive of any vague and undefined claim arising from nearness of relationship, but of those imperative duties which would be enforceable by law, were it not for some posi-

tive rule which, with a view to general benefit, exempts the party in that particular instance from legal liability. Were it not for the legal disability in the party making the contract at the time it was so made, the law would imply a promise. But by reason of such disability the contract cannot be enforced, unless there be an express promise to fulfill after the disability ceases. And the moral obligation thus to perform the contract made under disability has been held to be a good consideration to support the express promise. Therefore Judge BRONSON said, in *Ehle* agt. *Judson*, (24 *Wend.*, 97,) that the moral obligation to pay a debt barred by the statute of limitations, or an insolvent's discharge, or to pay a debt contracted during infancy or coverture, and the like, will be a good consideration for an express promise. But a merely moral or conscientious obligation, unconnected with any legal or equitable claim, is not enough. The doctrine thus laid down and stated with great precision and accuracy, is fully sustained by the authorities.

BUTLER, J., in *Hawkes* agt. *Saunders*, (*Cowp.*, 289,) says : The point in justice, equity and good conscience to pay a sum of money, be or be not a sufficient consideration in point of law to support a promise to pay that sum ? If such a question, he says, were stripped of all authorities, it would be resolved by inquiring whether law were a rule of justice, or whether it were something that acts in direct contradiction to justice, conscience and equity. He says the matter has been repeatedly decided, and refers to numerous authorities.

In *Barnes* agt. *Hedley*, (2 *Taunt.*, 184,) a promise to pay a void and usurious debt was held binding on the party making it ; and although the promissor was not and never had been under any legal obligation to pay the debt, yet it was held that in conscience and equity he was bound to pay the money actually borrowed, and that such moral

obligation formed a good consideration for a promise to pay it.

*Lee* agt. *Muggeridge* (5 *Term*, 10) is a case often referred to, and was regarded as a controlling authority until a late period, when its soundness has been in some degree questioned. There a *feme covert*, having a separate estate, gave a bond for the repayment, by her executors, of a certain sum of money advanced at her request, on the security of that bond, to her son-in-law. After her husband's decease she wrote, promising that her executors should settle the bond. It was held that assumpsit would lie against the executors upon the promise of their testatrix. MANSFIELD, C. J., said that it had long been established, that where a person is bound morally and conscientiously to pay a debt, though not legally bound, a subsequent promise to pay will give a right of action; and the judges say that the case is not distinguishable from *Barnes* agt. *Hedley*, (*supra*;) that in that case, certainly, Hedley was never for a moment legally bound to pay a farthing of that money for which he was sued.

*Bentley* agt. *Morse* (14 *Johns.*, 468) is a case similar in principle to *Hedley* and *Barnes*. In that case a debt had been paid, and a receipt taken therefor as evidence of the payment. A suit was brought to recover the same debt, and the receipt not being produced a recovery was had, and the amount paid the second time. There was, therefore, no legal liability on the part of the creditor to refund the money, but a moral and conscientious obligation to do so, as he had no claim morally to the money paid the second time. It was held that a promise to repay, on production of the receipt, was founded on a good consideration. The court say : " The debt having been paid, the recovery in the former action was clearly unjust, and though, in consequence of his neglect, the defendant in error lost all legal remedy to recover back his money, yet there was such a moral obligation on the part of the plain-

tiff in error, to refund the money, as would be a good consideration to support an assumpsit or express promise to pay it. The moral obligation is as strong as any in the cases in which it has been held sufficient to revive a debt barred by statute or some positive rule of law. It is like the promise of an infant to pay a debt contracted during his nonage, or of an insolvent or bankrupt to pay a debt from which he is discharged by his certificate."

*Littlefield* agt. *Shee* (2 *Barn. & Ald.*, 811) was decided in 1831, and on the ground that in that case the debt which the wife promised to pay, after she became discovert, was the debt of her husband, and she was under no obligation to pay the same. Butcher's meat had been furnished to the wife for the space of about six months, while her husband was absent in Europe, and after his death she promised to pay it. Lord TENTERDON held that the plaintiff had failed to show that he had supplied the defendant with the meat, but that it appeared it was furnished to her while her husband was living, so that the price constituted a debt due from him. They were therefore of the opinion that the declaration was not supported by the proof, and the nonsuit was right. *Lee* and *Muggeridge* is referred to, and it is remarked that all the circumstances in that case showed that the money was in conscience due from the defendant.

In *Eastwood* agt. *Kenyon* (11 *Adol. & Ellis*, 438) the broad doctrine laid down in *Lee* agt. *Muggeridge* is criticised by Lord DENMORE, and it is said that that doctrine would annihilate the necessity for any consideration at all, inasmuch as the mere fact of giving a promise creates a moral obligation to perform it; and he quotes with approbation the note to *Wennall* agt. *Adney*, (*supra*,) " that an express promise can only revive a precedent good consideration which might have been enforced at law through the medium of an implied promise, had it not been suspended

by some positive rule of law; but can give no original cause of action, if the obligation on which it is founded never could have been enforced at law, though not barred by any legal maxim or statute provisions." And he thought the case of *Barnes* agt. *Hedley* was fully consistent with the doctrine of this note.

*Watkins* agt. *Halstead* (2 *Sand. S. C. R.*, 311) was a case of goods sold under such circumstances, that the husband was clearly liable for them, and that no moral obligation rested upon the wife to pay for them. Her promise, after she was divorced from her husband, to pay for them, was but a promise to pay the debt of another person, and the court held, following *Littlefield* agt. *Shee*, that there was no good consideration to support the promise. I should judge, from the statement of the case, that the goods were originally charged to the husband and sold on his credit, with the understanding that if he did not pay for them, the wife would.

*Geer and wife* agt. *Archer* (2 *Barb. S. C.*, 420) was a case where it was held that a mere moral or conscientious obligation, unconnected with a prior legal or equitable claim, is not sufficient to support an express promise, and the rule as laid down in the note in *Bosan.* and *Puller* (*supra*) is cited as containing the true text.

In the present case, can there be any doubt but that the defendant, if she had been a single woman, would have been under a legal and equitable obligation to pay for these goods? The law would have raised, in that event, an implied promise to pay for them. An express promise, therefore, revived a precedent good consideration which might have been enforced at law, through the medium of an implied promise. The inability of the wife to contract is precisely the same as that of an infant, and cannot be distinguished. If a sale and delivery of goods to an infant imposed a moral obligation upon him to pay

for them, it is not perceived why a sale and delivery of goods to a married woman, as in the present case, solely on her credit and responsibility, she being a trader doing business in her own name and for her own personal benefit and advantage, and holding herself out as an unmarried woman, does not impose upon her the same moral obligation to pay for them. This case is distinguishable, therefore, from those of *Littlefield* and *Shee*, and *Watkins* agt. *Halstead*, in that the debt in the present case was never that of the husband. The wife here was a sole and separate trader on her own account and for her own personal advantage, and not by permission of the husband. He was not, therefore, liable for the debt contracted by her; neither would the property so purchased by her be liable to the payment of his debts. (*Sherman* agt. *Elder, decided at March term*, 1862, 24 *N. Y.*, 381; 2 *Bright on Husband and Wife, p.* 300; *Smith* agt. *Silliman*, 11 *How. Pr. R.*, 368.) This is not in conflict with the case of *Lovett* agt. *Robinson*, (7 *How. Pr. R.*, 105,) as that case was put on the ground that the wife was living and cohabiting with her husband; and it was held then that the goods thus purchased by her became those of her husband, and the title thereto was vested in him.

It follows, from these views, that the debt referred to in the complaint, under the circumstances therein detailed, was not the debt of the defendant's husband, but that morally and equitably she ought to pay the same. That but for the rule of law prohibiting a *feme covert* from entering into or making a legal contract, the law would have implied a promise on her part to pay for the same, and that, after such disability ceased, she having made an express promise to pay the price of such goods, the moral obligation or duty resting on her to make such payment formed a good consideration for such promise, and she is consequently liable to pay for the same.

The judgment of the supreme court should therefore

be reversed, and judgment should be given for the plaintiff on the demurrer, with costs.

Judges BALCOM, (read an opinion to the same purport,) WRIGHT, DENIO, ROSEKRANS, MARVIN and SELDEN concurred. EMOTT, J., was absent.