## DICKENSON *vs.* PHILLIPS and others.

No particular form of words is necessary, to constitute an equitable assignment of a fund. But there must, at least, be evidence of an intention to appropriate the fund.

P. being indebted to D. gave him security for the payment of the debt, upon a schooner belonging to him; agreeing, at the same time, that he would procure an insurance upon the vessel, and transmit the policy to the creditor. He subsequently caused the schooner to be insured in the name of G., a third person, and wrote to D. informing him thereof, and stating that G. was to hold the amount of the insurance subject to the order of D. in case of loss; and assuring D. that his interest would at all times be kept covered by insurance. The debtor also told another person that he had directed G. to pay the proceeds of the policy to D., but there was no evidence that he had done so; *Held* that these representations and assurances merely showed an *intention* on the part of P. to appropriate the avails of the insurance to D.'s benefit; and that they did not amount to an equitable assignment to D. of P.'s interest in the proceeds of the policy, so as to give D. a specific lien thereon.

The distinction between those cases in which the transaction has been held to constitute an equitable assignment of a fund, and those in which it has been held not to constitute such an assignment, depends upon the question whether the party having the control of the fund intended, in fact, to make an absolute appropriation of it, or whether he intended himself to retain the control of it; *it seems.*

In order to constitute a specific appropriation of a particular fund to the payment of a specific debt, an intention to surrender to the creditor all control over the fund; is necessary.

Where a debtor gives to his creditor an order upon one indebted to him, requesting him to pay to the creditor the amount of his debt, such order will be construed as an equitable assignment of the debt; even though the drawee had never assented thereto.

IN EQUITY.   On the 6th of September, 1843, the defendant Phillips, being indebted to the plaintiff in the sum of $3500; gave to him five drafts upon J. Cohen, jun., of Charleston, S. C. for the amount of the indebtedness, and also gave him security for the debt upon the schooner Eliza Jane, of which he was owner and master, by an instrument alleged by the plaintiff to have been intended as a mortgage, and by the defendants Newbold & Cruft to have been a bottomry bond. The transaction took place at Boston. Phillips being a resident of Brewer in the state of Maine, and the plaintiff residing at Wilmington;

Dickenson *v.* Phillips.

North Carolina. The premium reserved in the bond executed by Phillips to the plaintiff, was 12 per cent; and it was agreed between the parties, at the time of giving the security, that Phillips should procure insurance upon the vessel in the state of Maine, and pay the premium, and transmit the policy to the plaintiff; and that this policy when received, should be in lieu of *marine interest.* On the 29th of September, Phillips wrote to the plaintiff from Bangor, apprising him that the drafts on Cohen would not be accepted, and saying, "I shall keep the schooner insured for your protection and myself." No insurance was effected on the vessel until the 7th of February, 1844, when, being at New-Orleans and about to sail for New-York, she was insured by the Hartford Protection Insurance Company for $3500 during her voyage to New-York and on her return to and at New-Orleans, "*loss, if any, payable to Levi H. Gale.*" On the 26th of February, 1844, Phillips wrote to the plaintiff from Mobile, saying, "*I have got the schooner insured in New-Orleans for* $3500 *by the house of Mr. L. H. Gale; he to hold the amount subject to your order in case of loss. You may be assured your interest will at all times be kept covered by insurance.*" On the last mentioned day, the plaintiff caused the vessel to be insured at Baltimore, for the same amount, "at and from New-Orleans to New-York," for his own benefit. On the 6th of March following, the plaintiff wrote to Gale at New-Orleans, stating as follows: "Capt. Phillips informs me he had insurance made on the schooner, through you, for $3500, with instructions to hold the amount in case of loss, subject to my order, which please confirm in your answer. I hold a respondentia bond on the E. Jane for $3500 which will explain my interest in the matter." And on the day following, he again wrote to Gale a letter, in which he informs him that the schooner had put in at Charleston in distress, with the loss of deck load, sails, &c. and would likely be condemned. He adds, "you will therefore hold the policy on the vessel for my benefit under my respondentia bond, and be good enough on receipt of this, to state if the vessel was valued as well as insured at $3500." On the 15th of March, Gale wrote to the plaintiff in-

forming him that the freight of the vessel on her voyage to New-York, amounted to $1051,82, against which a draft had been drawn at 60 days for $940, on Messrs. Newbold & Cruft, the consignees in New-York, and they had secured themselves by effecting insurance on the freight. He further says, "insurance is effected here for $3500 for the voyage from this port to New-York and back." On the 6th of February, 1844, Phillips made his drafts at 60 days, on Newbold & Cruft, for $940, in favor of Gale, on account of disbursements of schooner Eliza Jane; and on the same day Gale wrote to Newbold & Cruft apprising them of the draft and consignment of the vessel to them, and requesting them to insure the freight for $1000. The draft was accepted, and paid by the drawees. The vessel sailed from New-Orleans on the 12th of February, and having met with disasters, a part of her cargo was *jettisoned*, and she put into Charleston in distress. The cost of repairing and refitting amounted to about $4000; to pay which, a portion of the cargo was sold, and for the residue of the expense the vessel was put under a bottomry bond. Having arrived at New-York, with a small portion of her cargo, on the 10th of May, proceedings were there instituted to enforce the Charleston bottomry bond; and the vessel was sold without producing any surplus for the plaintiff.

On the 6th of May, Gale enclosed the policy of insurance to Newbold & Cruft, requesting them to present the necessary documents to the insurance company, and collect what was due upon the policy. And he directed them, if there should be any balance in their hands, to hold the same *subject to his order*. The instructions contained in this letter were confirmed by Phillips. On the 27th of the same month Newbold & Cruft settled the claim with the insurance company, and received $2500,62 in full, and cancelled the policy. On the following day they forwarded to Gale their account; crediting the amount received upon the policy, and charging the draft for $940 paid by them, and various other items, amounting in the whole to $1106,76, and leaving in their hands, to the credit of the schooner and the owners, a balance of $1393,90. On the 6th of June, Gale

wrote to Newbold & Cruft enclosing two protested drafts drawn in his favor by Phillips, amounting to $440, to be paid out of the proceeds of the policy. On the 13th of July, Newbold & Cruft remitted to Gale the amount of his drafts, and paid to the attorneys for the plaintiff the balance in their hands, amounting to $993,88. This bill is filed to obtain a decree against Newbold & Cruft for the balance of the insurance money retained by them in payment of the $940 draft which had been accepted and paid by them. The bill was taken as confessed by Phillips and Gale, as absent defendants. The cause was heard upon pleadings and proofs as to the defendants Newbold & Cruft.

*T. Sedgwick & C. B. Moore*, for the plaintiff.

*D. Lord & D. D. Lord*, for Newbold & Cruft.

HARRIS, J. I am inclined to think the plaintiff's security upon the vessel is to be regarded as a bottomry bond, and not a mortgage. But in the view I have taken of the questions involved in this case, it is not necessary to decide whether it was the one or the other. It is enough that there was a debt due from Phillips to the plaintiff, for which he held security upon the vessel. The insurance, though in the name of Gale, was for the benefit of Phillips. Though by the terms of the policy the loss, if any, was payable to Gale, these words merely constituted him the attorney of Phillips, or such other person as he should appoint, to receive the moneys payable upon the policy, in case of a loss. Phillips, then, is to be regarded as the party insured; with full power to transfer his interest in the policy as he should see fit. The question, upon the decision of which this case must depend, is whether he has in fact made such a transfer to the plaintiff. If he has, then the defendants Newbold & Cruft are liable to the plaintiff for the balance of the moneys received by them upon the settlement with the insurance company, after deducting their expenses and commissions. On the other hand, if, when those moneys were received, no valid

transfer had been made by Phillips, they had a right to retain in their hands the balance due them from Phillips. To sustain his claim to the fund, the plaintiff relies chiefly upon the letter of the 26th of February, in which Phillips informs the plaintiff that Gale was to hold the amount of the insurance subject to his order; in connection with the subsequent declaration of Phillips to the witness De Peyster that he had directed Gale to pay the proceeds of the policy to the plaintiff. This, it is contended, amounts to an equitable assignment of Phillips' interest in the policy. Without stopping to inquire whether these *declarations* of Phillips are competent evidence as against Newbold & Cruft, I cannot regard them as sufficient to establish the plaintiff's position, that he acquired thereby an equitable lien upon the funds in question. All that is proved, by the testimony, is that the plaintiff was informed by Phillips that he had instructed his agent, in case of loss, to hold any moneys he might receive for him upon the insurance, subject to the plaintiff's order. Whether any such directions were ever in fact given to Gale, does not appear. So far as there is any evidence on the subject, it would seem that Phillips had never given any such directions; for when called on by De Peyster he professed a readiness to pay the proceeds of the policy to the plaintiff, if he was authorized to receive such proceeds; and offered, upon the production of the letter of the 26th of February, or an order from Phillips to the same effect, to direct the payment of the insurance money to the plaintiff. The plaintiff's case then stands upon the mere declaration of Phillips that he had appropriated the fund to the payment of his debt.

It is true that no particular form of words is necessary to constitute an equitable assignment. But there must at least be evidence of an intention to appropriate the fund. If Phillips, instead of writing to the plaintiff that Gale was to hold the insurance money subject to his order, had in fact given him an order upon Gale for such money, it might, perhaps, have had the effect to give him a specific lien upon the fund; though I think even that would not have been sufficient. Such an order would have contained what is not proved in this case, a direc-

Dickenson v. Phillips.

tion to pay, as well as the power to receive.   I am unable to distinguish this case, in principle, from that of *Rogers* v. *Hosack's Executors*, decided by the court for the correction of errors, (18 *Wend.* 319.)   There, it was held that an agreement to pay certain debts out of a particular fund, without any words of transfer, and without any power or authority to receive such fund, could not be construed to give such creditors a specific lien upon the fund.   So, in this case, the most that the plaintiff can claim is, that he has shown an intention on the part of Phillips to appropriate the avails of the insurance he had effected, to the plaintiff's benefit.   As in the case of *Rogers* v. *Hosack's Executors*, there is no pretence that any words of transfer were used, or that any authority was given by Phillips to collect the insurance money in case of loss.   On the contrary, the letter itself upon which the plaintiff relies, shows that it was contemplated that the fund was to be received by the agent of Phillips himself.   At the most, the evidence in the case only shows that Phillips gave the plaintiff repeated assurances of his intention to keep the vessel insured for his benefit.   Such assurances cannot, I think, operate to give the plaintiff a specific lien upon the proceeds of the policy.   It may well be that Phillips honestly intended that the fund should be applied to the payment of his debt to the plaintiff; and if Phillips had directed the insurance company to pay the money to the plaintiff, such order might have constituted an equitable assignment which a court of equity would enforce.   But no such directions were given.   On the contrary, Phillips retains the right, through his agent, to collect the money himself.   And even if it had appeared that he had in fact given to his agent the instructions mentioned in the letter of the 26th of February, it might well be contended that such instructions amounted to nothing more than a mere mandate from a principal to his agent; which might be revoked at any time before it was executed—or at any rate, at any time before any engagement should be entered into by the agent to execute it for the benefit of the party in whose favor it was given.   Such instructions, if any were ever given, were in fact revoked, by the letter of the 6th of May, approved by Phil-

lips enclosing the policy to Newbold & Cruft for adjustment and payment. By an endorsement upon the policy itself, Newbold & Cruft are authorized to receive from the insurance company the amount due thereon. And the letter directs them, in case there should be a balance in their hands, to hold the same subject to the order of Gale. This was a disposition of the fund, at least so far as relates to that portion of it now in question, inconsistent with its appropriation to the payment of the plaintiff's debt; and was therefore, in effect, a revocation of any instructions previously given, if indeed any such ever were given, to pay the proceeds of the policy to the plaintiff.

The case of *Clayton* v. *Fawcett*, (2 *Leigh's Va. Rep.* 19,) cited with approbation, by Senator Dickinson, in delivering the opinion of the court in the case of *Rogers* v. *Hosack's Executors*, is a stronger case than that under consideration, in favor of sustaining the doctrine of equitable appropriation as applicable to such a case. There Fawcett had placed a bond in the hands of his agent for collection; and being indebted to Clayton, he gave him a letter addressed to his agent, directing him to pay the money to Clayton when collected, if he should not happen to be present. Fawcett having died, the question arose between his representatives and Clayton, whether this letter to the agent of Fawcett amounted to an equitable transfer of the money. The chancellor held that no such construction could be given to it, and his decision was affirmed by the court of appeals. In that case, the letter to the agent of Fawcett was but an authority to him to pay the money to Clayton; and not being accompanied by an assignment, and not having been executed at the time of the death of Fawcett, such death operated as a revocation of the authority; and the money in the hands of the agent became a part of Fawcett's estate. The distinction between those cases in which the transaction has been held to constitute an equitable assignment, and those in which it has been held not to constitute such an assignment, seems to depend upon the question whether the party having the control of the fund intended in fact to make an absolute appropriation of it, or whether he intended himself to retain the control of it.

Dickenson *v.* Phillips.

Thus in *Clayton* v. *Fawcett,* instead of giving Clayton an order upon his debtor for the payment of the money, which would have amounted to an appropriation of the fund specified in the order, he gave him a letter to his own agent, for the payment of the money, when collected. So in the case of *Rogers* v. *Hosack's Executors,* Gracie, instead of giving his creditors, themselves, authority to collect the money due him on account of claims upon the French government, himself retains the power to collect the money, and only promises that he will pay the creditors out of the money when collected. On the other hand, when, as in *Yeates* v. *Grover,* (1 *Ves. jun.* 280,) a debtor gives to his creditor an order upon one indebted to him, requesting him to pay the amount of his debt, such order will be construed as an equitable assignment of the debt; even though the debtor upon whom it is drawn had never assented thereto. In every case I have been able to find, where a debtor has been held to have made a specific appropriation of a particular fund to the payment of a specific debt, an intention to surrender to the creditor all control over the fund has been shown.

In any view I have been able to take of this case, whether the plaintiff's security upon the vessel is to be regarded as a bottomry bond or a mortgage—or whether the declarations of Phillips, by his letter on the 26th of February, and to the witness De Peyster, are competent evidence against Newbold & Cruft, or not—or whether or not he gave to his agent such instructions as are mentioned in the letter of the 26th of February, I cannot regard the plaintiff as having obtained a specific lien upon the proceeds of the policy. The bill must therefore be dismissed as against Newbold & Cruft, with costs.