[No. 856.]

## J. E. JONES & CO., Respondents, *v.* PACIFIC WOOD, LUMBER AND FLUME COMPANY, Appellant.

Inland Bills of Exchange Not an Assignment of Funds.—An order in the form of an inland bill of exchange not upon any particular fund is not, before acceptance, an assignment, and does not create any lien in favor of the holder upon funds of the drawer in the hands of the drawee.

Appeal from the District Court of the Second Judicial District, Washoe County.

Instructions 2 and 3 offered by defendant and referred to in the opinion, read as follows: No. 2. "If the jury believe that prior to the making and presentment to D. H. Jones as agent for the defendant, of the order of July 21, for ten thousand dollars, it had been agreed between this defendant by said Jones as agent of the defendant, and M. Pettinelli & Co., that the defendant should guarantee to pay the workmen of said Pettinelli & Co., the amount due from said firm, and said Jones as agent for the defendant did guarantee and pay said workmen in pursuance of said agreement, then the said order in favor of the plaintiffs, even if good in other respects, would be postponed to this agreement, and the defendant would not be liable to pay the orders except from the surplus of funds remaining after the payment of the workmen. If the agreement embraced not only the amount due the workmen, at the time it was made, but also the amount to become due, then, for future labor, the defendant was not liable to pay the order until the workmen had been paid in full for the labor performed after, as well as before, the making of the agreement."

No. 3. "If the written order to pay the workmen, dated July 20, introduced by defendant, was executed by M. Pettinelli & Co. and delivered to D. H. Jones as agent of defendant prior to the presentment of said Jones' order for ten thousand dollars, of July 21, in favor of J. E. Jones & Co., and if at the time of the execution and delivery of said first named order, D. H. Jones as agent for the defendant accepted the same verbally, and agreed with Pettinelli &

Pardini that he would pay the workmen as they requested, then the defendant had the right and was bound to pay said workmen before paying said orders to Jones & Co., and Jones & Co. could only demand on their order the surplus due Pettinelli & Co. after paying the workmen in full."

The facts are stated in the opinion.

*C. J. Hillyer*, for Appellants.

I. The demurrer to the complaint should have been sustained. The orders set forth in the complaint containing no reference to any special fund, but being simple bills of exchange in the ordinary commercial form, did not, until accepted, operate as an assignment of, or create any lien upon, funds of the drawer in the hands of the drawee. (*Mandeville* v. *Welch*, 5 Wheat. 277; *Luff* v. *Pope*, 5 Hill. 413; affirmed in Court of Errors, 7 Hill. 577; *New York etc. Bank* v. *Gibson*, 5 Duer, 585; *Gibson* v. *Cook*, 20 Pick. 15; *Copperthwaite* v. *Sheffield*, 1 Sand. 449; *Marine etc. Bank* v. *Jauncey*, 3 Id. 257; *Harris* v. *Clark*, 3 Com. 114; *Phillipps* v. *Stagg*, 2 Eds. Ch. 109; Id. 437; *Row* v. *Dawson*, 1 Vesey, Sr. 331; *Yeats* v. *Groves*, 1 Vesey, Jr., 280; *Watson* v. *Duke of W.*, 1 R. & M. 602; 1 Parsons on Notes and Bills, 331; Drake on Attachment, sec. 611.) The court erred in refusing the first, second and third instructions offered by defendant.

*R. M. Clarke*, for Respondents.

I. Although the orders in question are in form ordinary bills of exchange, they were in fact drawn upon the fund arising from the wood contract, and so operated to assign so much of said fund as was due and was specified in the orders. (1 Keyes, 193; *Lewis* v. *Berry*, 64 Barb. 593; *Conway* v. *Cutting*, 51 N. H. 409.)

II. The orders were assented to, made at the instance of, and were agreed to be paid by, appellant, and for this reason the authorities cited for appellant are not in point.

III. The orders in question did not operate to "split" one cause of action into many, because, under the contract, P. & P. were entitled to advances whenever "proper,"

which advances, when "proper," were always due and were separable from the contract price of the wood. But in this state where but one form of action exists, where law and equity are administered in the same forum, and where the assignee and real party in interest must sue, an assignment of part only of an entire demand is valid and may be enforced. (*Grain* v. *Aldrich*, 38 Cal. 514.)

By the Court, Leonard, J.:

In August, 1875, defendant entered into a written contract with M. Pettinelli and M. Pardini, partners and doing business under the firm name of M. Pettinelli & Co., whereby P. & Co. agreed, prior to July 1, 1876, to cut, manufacture and pile for defendant, thirty thousand cords of fire wood of a stipulated length, upon lands of defendant, selected and agreed upon by both parties. P. & Co. also agreed to cut all trees suitable for mill purposes into saw-logs of certain length and diameter, or pay all damages for failure so to do, and to "clear up" the land whereon the wood was cut.

Defendant agreed to pay P. & Co. therefor ninety cents a thousand for cutting the logs, and two and one eighth dollars per cord for the wood so cut and piled. Defendant was to measure the wood and its measurement was to be taken as correct. Defendant agreed to make such advancements, in the meantime, as might be "proper" for P. & Co. to carry out their contract.

Under the contract stated, P. & Co. cut between eight and nine hundred cords in the fall of 1875, when they ceased work until April, 1876, at which time they resumed and continued until about the first of September, 1876, when they ceased work altogether; having cut, according to defendant's books, a little less than fifteen thousand cords of wood, and about five hundred and eighty-four thousand two hundred and twenty-four feet of logs. Defendant paid to P. & Co., or on their account, considerable sums of money from time to time, the first payment having been in November, 1875; and thereafter the record shows payments each month, except January and July, 1876. P. & Co. cut the

wood partly by men employed by the day and partly by sub-contractors.

It also appears that on or about the seventeenth or eighteenth of July, 1876, P. & Co. became involved, and were unable to pay their laborers, who were dissatisfied and threatened to stop work if they were not paid or their wages secured. They proposed to keep possession of the wood that had not been measured and accepted by defendant, until they were paid. Under such circumstances, D. H. Jones, defendant's superintendent, made a verbal agreement with P. & Co., on the eighteenth of July, with the consent and to the satisfaction of the laborers and sub-contractors, or at least a large part of them, to the effect that defendant should pay the men for their labor out of the first moneys due to P. & Co., under the wood contract. Under this arrangement the men continued their work. In accordance with the verbal agreement stated, Pettinelli & Pardini, on the morning of July 21, and prior to the drawing of the ten thousand dollar order hereinafter mentioned, made and delivered to defendant's superintendent a written order, signed by both, directing the superintendent to retain from the first moneys due to P. & Co. on their contract, the amount due their men for work done on wood and logs by the terms of their contract, the balance, after paying the men, to be held subject to their order.

The superintendent verbally accepted the order and agreed to pay the men accordingly. He commenced to pay the laborers about the first part of August, generally upon statements from P. & Co., showing the amount due, and continued to do so until P. & Co. discontinued work. Defendant paid the men in full, and from the testimony of the superintendent and the books of defendant, it appears that, including the amount paid the men, P. & Co. have been paid the whole amount coming to them under their contract, except four hundred and eighty-nine dollars, for which amount defendant is liable on account of legal garnishments in suits against P. & Co.

Plaintiffs did not make any advancements, or pay any sums of money to P. & Co. after the twenty-first of July,

nor did defendant pay any sum to or for P. & Co. on their contract, after that date, except the amounts due the men as before stated, and certain sums for which defendant was held as garnishee, the latter not being questioned by plaintiffs. During the continuance of work under the contract, between the first part of June and the twenty-first of July, 1876, P. & Co. represented to plaintiffs, who are bankers in Reno, that defendant was indebted to them on their contract in a large sum—about ten or twelve thousand dollars—and thereupon plaintiffs honored their checks from time to time, taking orders or drafts upon defendant as security for money advanced or to be advanced.

On the sixth day of June, 1876, when P. & Co. were indebted to plaintiffs in about the sum of one thousand three hundred dollars, for advances, the former made and delivered to the latter an order of which the following is a copy:

Reno, June 6, 1876.

"1,000.  Pay to the order of J. E. Jones & Co. one thousand dollars in United States gold coin, value received, and charge the same to the account of

M. Pettinelli & Co.

To the Pacific Wood, Lumber and Flume Company, Virginia City, Nev."

On the same or following day, plaintiffs forwarded the order to the defendant with the request that the latter should "hold it against P. & Co. for plaintiffs' benefit, that in case any suit should be brought against P. & Co., the order might operate as an assignment to the extent of one thousand dollars."

On the sixteenth of July, 1876, defendant's superintendent returned the order to plaintiffs with a letter wherein he said: "The inclosed draft I find among the papers of the company. To avoid any question (as) to Pardini's authority to draw in this way, I return it to you for proper signature (P. & P.), which please get, and if you wish, will hold him (them) for payment from any balance due them in settlement and completion of the contract." This draft was returned by the plaintiffs to P. & Co. on the twenty-first of July.

On the tenth day of June, 1876, when P. & Co. were indebted to plaintiffs in the sum of two thousand two hundred dollars for advances, the former made and delivered to the latter an order upon defendant, in the same form, for six thousand dollars. This included two thousand five hundred dollars due from P. & Co. to one Mayberry, and the balance was intended to secure plaintiffs for advances made and to be made. Mayberry presented the order to defendant on the tenth of June for acceptance and payment. Defendant indorsed its written acceptance for two thousand five hundred dollars, and paid that amount to Mayberry, who receipted therefor in the name of J. E. Jones & Co. On the nineteenth of June defendant accepted this order for the balance, three thousand five hundred dollars, which was paid to plaintiffs September 13, 1876.

On the sixth of July, 1876, plaintiffs, for the same purpose, received a third order from P. & Co., in the same form, for three thousand dollars, when P. & Co. owed plaintiffs four thousand and seventy-five dollars—less the acceptance of three thousand five hundred dollars, before mentioned. This order was returned by defendant without acceptance, and with the order for one thousand dollars was given up by plaintiffs to P. & Co. July 21. On the twenty-first of July, when P. & Co. owed plaintiffs about six thousand five hundred dollars, less the acceptance of June 19 for three thousand five hundred dollars, and at the time that the one thousand dollar and three thousand dollar orders were returned by plaintiffs to P. & Co., the latter gave plaintiffs a fourth order for ten thousand dollars, to cover and secure the entire indebtedness due from P. & Co. to plaintiffs, further advances, and some debts due to other parties. Plaintiffs were not to be responsible to those last named, unless this order was paid. Defendant had notice of the different orders named soon after they were drawn, but none were accepted except the one for six thousand dollars, which was paid, as before stated, before the commencement of this action. Defendant had no notice of the ten thousand dollar order until after its agreement to pay P. & Co.'s indebtedness to the men, and there was no evidence

of an assignment, unless the drawing and delivery of the orders heretofore mentioned, and set out in the complaint, constituted such assignment. Plaintiffs admit that defendant's superintendent refused to accept the order for ten thousand dollars when they presented it on the twenty-first of July, but there is some conflict in the testimony as to what the superintendent said at the time of, and after, its presentation. Plaintiffs admitted on cross-examination that the superintendent did not bind himself to pay it, but that he, at least, conveyed to them the idea that there would be sufficient coming to P. & Co. to pay all their debts, while the superintendent testified, that he did not at any time, or in any manner, make any promise to pay any of the orders except the one for six thousand dollars; that the only promise was that he would do the best he could, and pay if there was enough coming, to P. & Co.; that he could not then say how the account stood; that so far as he had examined, the account looked better than he had anticipated, and he had no doubt there would be enough coming to P. & Co. to pay all their debts.

Three days after the ten thousand dollar order was presented, the superintendent wrote the plaintiffs as follows: "In relation to the account of Pettinelli & Pardini, I will say that there is not much doubt but that there is plenty due them in settlement to pay all their liabilities. Should anything occur to change my opinion in this respect, will let you know at once." About the middle of September he informed plaintiffs that the condition of P. & Co.'s account did not permit an acceptance of their orders; that P. & Co., after paying the workmen, had nothing coming to them. Until that time plaintiffs did not know of defendant's agreement to pay the men. It does not appear, however, that defendant could or should have given plaintiffs earlier information as to the state of P. & Co.'s account, or that plaintiffs were injured by the delay. Plaintiffs recovered judgment for three thousand dollars, the amount due to them from P. & Co., and this appeal is from the judgment and the order denying defendant's motion for a new trial. Appellant's assignments of error are numerous. Among others,

that the court erred in refusing to sustain its demurrer to the complaint, and in denying its motion for a nonsuit. We shall not consider these assignments, but shall endeavor to state the principles governing the case, in an examination of the principal instructions to the jury given for plaintiffs, as well as those offered by defendant, but rejected by the court.

All the orders set out in the complaint are admitted to be, in form, inland bills of exchange, as they undoubtedly are. None of them, upon the face, were drawn upon any particular fund. It is alleged in the complaint that all except the one for ten thousand dollars were drawn for a part, only, of the amount due P. & Co. from defendant; and as to the last, the complaint does not show with certainty whether its amount, and the sum alleged to have been due from defendant to P. & Co., were or were not the same. The proof, however, shows that they were all drawn for a portion of the fund—that is to say, the amount coming to P. & Co. upon the wood contract. The case was tried upon the theory that the orders mentioned, operated as an equitable assignment *pro tanto* of the fund, or the money due P. & Co. from defendant under the contract, and that after notice of such orders, defendant was bound to the extent of the sums stated in the orders, or to such part as was due from defendant to the drawers, without acceptance or other promise to pay the same.

Appellant urges that the court erred in so interpreting the orders in question, and this assignment constitutes the most important subject presented for our consideration. It is not necessary at present to inquire whether, in case of an order upon a particular fund, it is indispensable that such order shall embrace the whole fund in order to operate as an assignment. That question may not arise in the decision of this case, if it be true, as we think it is, that an order in the form of an inland bill of exchange is not, before acceptance, an assignment, and does not create any lien in favor of the holder upon funds of the drawer in the hands of the drawee.

The following instructions, among others, were given to the jury on behalf of plaintiffs:

"No. 15. You are instructed that the fact that the defendant has paid Pettinelli & Pardini, or persons for them, all the money due upon the contract for cutting wood and logs, is no defense to this action, provided the jury believe, from the evidence, that before such payments, Pettinelli & Pardini had assigned to plaintiff, with the knowledge or consent of defendant, the sum claimed by plaintiffs and due to them."

"No. 16. You are instructed that the orders set out in the complaint were an assignment of any sum or sums of money in the hands of the defendant, at the time due to Pettinelli & Pardini, and that if the defendant had notice of such orders at such time as said sums were due, then the orders bound the defendant to pay the plaintiffs the sums of money specified, and which were due."

" No. 10. You are instructed that no promise made by the defendant to pay the sub-contractors or laborers of Pettinelli & Pardini, sums of money, which at the time and before the promise was due to them from Pettinelli & Pardini, was valid or binding upon the defendant, unless the promise or some note or memorandum thereof was in writing."

"No. 13. You are instructed that the order or authorization directing or requiring D. H. Jones, superintendent, to retain and set aside from the money due Pettinelli & Pardini, on the contract, the sum due the men for work done on the wood and logs, was not an assignment in favor of the men of the sum, or any sum, of money then due from the defendant to Pettinelli & Pardini."

"No. 14. You are instructed that the order of July 21, 1876, directing the defendant to pay the plaintiffs ten thousand dollars, was a revocation of any previous authorization to pay the men, except as to such sums due to Pettinelli & Pardini, as were in excess of ten thousand dollars."

It will be noticed that, from these instructions, the jury could not fail to find for plaintiffs, if they found that defendant had notice of the orders, which it did not deny, and that, at the time the orders were presented, defendant was indebted to Pettinelli & Pardini, considering the amount paid to the laborers a portion of such indebtedness;

because they were told by instructions fifteen and sixteen not only that payments to P. & Co., or on their behalf, were no defense, if P. & Co., with defendant's knowledge or consent, had previously assigned to plaintiffs, but also that the orders in question constituted such assignment, and if defendant had notice of the orders, it was bound to pay the sums therein specified and which were due.

By the tenth, they were told that they could not consider defendant's promise to pay the men, unless the promise or some note or memorandum thereof was in writing, and, as we have seen, defendant admitted that it was not in writing.

By the thirteenth, they were told that the order from P. & Co. to defendant, to pay the men was not an assignment in their favor of any sum due to P. & Co., and by the fourteenth that the order last mentioned was revoked by the ten thousand dollar order in favor of plaintiffs, except as to any excess of that sum due from defendant to P. & Co. So, we repeat, there was nothing left for the jury but to find a verdict for plaintiffs, if they found that defendant had notice, and that it was indebted to P. & Co. at the time of such notice.

Let us consult the books. In Pars. on Notes and Bills, Vol. 1, 331, the author says: "There may be some *dicta* to the effect that a bill of exchange is an assignment, but no case that we are aware of, with the exception of one (referring to *Corser* v. *Craig*, 1 Wash. C. C. R. 424), has held this doctrine in an unqualified way, and that case must be considered as overruled. The doctrine is well settled, that before acceptance, a negotiable bill for a part of the funds is no assignment, but becomes one on the drawee's signifying his assent by accepting the bill." The case of *Hutter* v. *Ellwanger*, 4 Lansing, 11, is similar to this in many respects. One Underhill had contracted with the defendant to erect certain houses for a specified sum, of which eighty per cent. was to be paid as the buildings progressed, on the architect's certificates given once in two weeks. Plaintiff did the mason work under a sub-contract with Underhill, and on the seventh day of December, 1869, there was due to him from Underhill, on account of such work, six hundred and

seventy dollars. On that day Underhill drew and delivered to him an order as follows:

"$670. Messrs. Ellwanger & Barry: Pay the bearer, Mr. Hutter, six hundred and seventy dollars, and charge my account for building on Cypress street, when work is accepted, it being amount due him on settlement.

" December 7, 1869.            R. W. UNDERHILL."

Within a few days thereafter plaintiff notified defendants of the order. More than a month prior to the date of Hutter's order, Underhill gave to the payees therein named two other orders upon Ellwanger & Barry, as follows:

"Please pay to M. F. Reynolds & Co. five hundred dollars on my contract for building houses, when the work is completed and accepted.

" Nov. 4, 1869.            R. W. UNDERHILL."

$900. Pay to the order of Luther Gordon & Co., nine hundred dollars, at time of completion and acceptance of contract, value received, and charge to the account of

" Nov. 4, 1869.            R. W. UNDERHILL."

As in this case, Underhill had no other account with, or funds in the hands of, defendants than those arising from the contract for building, and defendants had due notice of the orders of November 4, prior to notification of plaintiff's order; Underhill's contract was completed and accepted December 12, 1869.

Defendants refused to accept plaintiff's order, but at the same time informed him that they had more than sufficient funds in their hands belonging to Underhill, on his contract, to pay it. They were mistaken, however, as to the amount of money due Underhill, the fact being, that the orders of November 4 covered the whole amount due Underhill, if both operated as an assignment of the building fund due from Ellwanger & Barry to Underhill. The court held that the order of November 4, for nine hundred dollars in favor of Gordon & Co., was not an assignment or appropriation of any part of the money due Underhill on his contract, but that the orders to Reynolds & Co., and to

Hutter, assigned and appropriated those moneys *pro tanto.* We quote from the opinion: "The previous order of five hundred dollars, was clearly, upon its face, drawn upon that fund, and the principal question on which the case turns is, whether the order of nine hundred dollars is also an order upon the same fund and operates as an assignment of it *pro tanto* to the payees. * * * An ordinary bill of exchange, before acceptance, is no assignment of funds in the hands of the drawee, and gives the holder no lien, legal or equitable, upon such funds. (*Winter* v. *Drury,* 5 N. Y. 525.) This order would be a bill of exchange but for the fact, that the time of payment may never happen. An order drawn, payable out of a particular fund, is not a bill of exchange, although drawn in the form of a bill of exchange in other respects, but an order. It is, however, an assignment of the fund, or so much thereof as may be necessary to satisfy the amount ordered to be paid, and the drawer has no further control over it. * * * But it seems to be perfectly settled that, in order to constitute an assignment, the order must specify the particular fund upon which it is drawn."

*The Marine and Fire Insur. Bank* v. *Jauncey et al.,* 3 Sandf. 258, was a suit in equity for the purpose of reaching certain funds received by the defendant Jauncey, arising from the sale of cotton delivered to, and sold by, him, on which plaintiff claimed to have an equitable lien, by reason of the facts stated in the opinion. The court says: * * * "It was next insisted that the bill or draft having been drawn against a consignment, was, of itself, an equitable assignment by the drawer of the property or its proceeds. This is certainly carrying the doctrine of equitable assignments very far, and is, in our judgment, entirely unsupported by authority. In the cases cited by counsel, and in all the other cases where an order has been held to be an equitable assignment of a particular fund, the fund has been specified in the order, and the party giving the order has thereby divested himself of all right to control the fund purporting to be assigned. The form of the assignment is immaterial, but these two ingredients are essential." And

to the same effect, that the order must in terms specify the fund, although the drawer has but one fund in the hands of the drawee, in order to operate as an assignment, see *Hutter* v. *Ellwanger, supra,* 13. In *Cowperthwaite* v. *Sheffield,* 1 Sandf. 450, the court says: "The instruments here were ordinary bills of exchange. They did not, on their face, purport to be drawn on any particular fund, nor did they import that their payment was to depend upon any particular contingency. In *McMenomy* v. *Ferrers,* 3 Johns, 72, it was held that where an order is drawn for an entire fund, the fund being particularly stated in the order, it operates as an assignment of the fund. If these bills had been in the form of orders for the entire proceeds of the shipment of cotton, they might, after notice to the Kelleys, have operated as an assignment of such proceeds. But, then, they would not have possessed all the characteristics of bills of exchange. If, in such form, they could be negotiated, they would, on their face, convey information to every holder of the fund on which they were drawn, and which they carried with them."

In *Harris* v. *Clark,* 3 Comstock, 115, it is said: "The research of the counsel for the plaintiff has not enabled me to find a case where it has been held, that upon a negotiable bill of exchange the drawee has been made liable in equity to the holder of the bill, without his acceptance or assent. Such an instrument gives to the holder no lien upon the funds in the hands of the drawee." This language is quoted with approval in *Lunt* v. *Bank of North America,* 49 Barb. 229.

In *Chapman* v. *White,* 2 Seld. 416, the question was, whether a draft payable generally, operated as an assignment, either at law or in equity. The court held that the instrument was an ordinary bill of exchange, and that the drawee owed no duty to the holder until it was presented and accepted.

*Winter* v. *Drury,* 1 Seld. 525, was a suit in equity, and after announcing the same doctrine the court adds: "If the holder, by the receipt of the bill of exchange for value, acquired neither at law nor in equity, a lien upon the balance

due to Clark (the drawer) and then remaining with the drawee, the drawer had the right to dispose of it at his pleasure.   If intermediate the time of procuring the bill to be discounted, and its presentation to Furness, Brindley & Co. (drawees) the drawer himself had obtained the two hundred and fifty dollars from his correspondent, the plaintiff could not have maintained an action against Clark for the sum thus received.   It was not the money of the holder, but of the drawer.   (11 Paige, 612.)

*Luff* v. *Pope,* 5 Hill, 415, was an action upon an ordinary bill of exchange drawn by one Bell in favor of plaintiff Pope.   The court said: *   *   *   "There is no color for the argument that the instrument on which the plaintiff sued was not a bill of exchange.   A bill of exchange is a written order or request by one person to another, for the payment, absolutely and at all events, of a specified sum of money to a third person.   Now, what have we here?   Bell requests Luff, thirty days after sight to pay a specified sum of money to Pope.   It is payable absolutely, and without reference to any particular fund, and if it be not a bill of exchange, the wit of man cannot devise one.   The justice thought it was not a bill, but only 'an order or instrument in writing,' because it was said at the time, and the proof tended to establish the fact, that Luff had funds in his hands belonging to Bell.   It would be enough to say, that a written instrument which is perfectly plain and explicit on its face, cannot be changed into something else by anything which the parties said at the time of making it, nor by any extrinsic facts. It must speak for itself."

In *Hopkins* v. *Beebe,* 26 Pa. St. 85, it was held that the holder of a bill of exchange is not the owner of money, goods or effects remitted by the drawer to the drawee; nor has he any lien upon the funds, whether the remittance was made before or after the date of the bill; that effects remitted to meet a bill drawn, or intended to be drawn, are the property of the party remitting them, and he may transfer or use them as other men use their own, at any time after they are shipped; that the holder of a bill of exchange drawn against such remittance cannot call the remittee to

account for them, or follow them into the hands of a party with whom he has no privity, and who has paid the remitter a valuable consideration for them; that if the bill be unpaid, the holder's remedy is an action on the bill itself.

The following additional authorities sustain those from which we have so liberally quoted: *Harrison* v. *Williamson*, 2 Edwards, Ch. 437; *Pope* v. *Luff*, 7 Hill, 577; *Dickinson* v. *Phillips*, 1 Barb. 454; *Kimball* v. *Donald*, 20 Mo. 577; Drake on Attachments, sec. 611.

An equitable assignment secures to the assignee the property against attachment for the debt of the assignor, although no notice be given prior to attachment. It is only necessary that notice be given in time to enable the person holding the property or owning the debt, to bring the fact of such assignment to the attention of the court before judgment is rendered against him as garnishee. (Drake on Attachments, sec. 527.) Between the parties, the assignment is complete the moment it is made, although no notice be given, and if, after the assignment, the assignor received payment of the debt, he will be obliged to pay the amount to the assignee. (Drake on Attachments, sec. 606; *Miller et al* v. *Hubbard*, 4 Cranch, C. C. R. 453.) If, then, the orders set out in the complaint operated as assignments, it follows that if any other creditor of P. & Co. had garnished the defendant immediately after the orders were delivered to plaintiffs, and before notice to such creditor or to defendant, plaintiffs' lien would have taken precedence, in case the defendant had received notice before its liability had become fixed as garnishee; and if these orders were assignments, it follows, too, that in all cases, a bill of exchange drawn upon the general fund or general credit of the drawer, is an absolute appropriation of his funds *pro tanto;* that thereafter the drawer has no further control of such funds; and, that after notice merely, if the drawer pays out such funds even to the drawee in person, he does so at his own peril and risk. If these orders are assignments, then every bill of exchange is an assignment, and the statute is practically a nullity. (Compiled Laws, 14.) There are many authorities which hold that, an order drawn on a particular

fund in the hands of the drawee, the fund being stated in the order, is, *pro tanto,* an assignment of the fund to the payee. A less number, of the highest authority, hold, that before the order can so operate, it must call for the whole fund. But after careful research, we are not able to find a single decision of any court of last resort, which hold that a negotiable bill of exchange for less than the whole fund, operates as an assignment; and the fair result of the authorities is, that a bill of exchange proper, is never, *per se,* an assignment. As said by the author in Pars. on Notes and Bills, quoted above, there may be some *dicta* to the contrary, but no well-considered case. General expressions may be used in text books that indicate a different doctrine, until the cases cited by the author are examined. For instance, in Story's Eq. Jur., sec. 1044, after speaking upon this subject, in actions at law, the writer says: "But in cases of this sort, the transaction will have a very different operation in equity. Thus, for instance, if A., having a debt due to him from B., should order it to be paid to C., the order would amount in equity to an assignment of the debt, and would be enforced in equity, although the debtor had not assented thereto. The same principle would apply to the case of an assignment of part of such debt. In each case a trust would be created in favor of the equitable assignee on the fund and would constitute an equitable lien upon it."

In referring to this language of Judge Story, the court in *Harris* v. *Clark, supra,* said: "This is undoubtedly true with respect to drafts on a special fund, which are not bills of exchange; and it will be found on a careful reading of the section referred to, and of the cases quoted in the notes, that the commentator is speaking of orders to pay over particular debts and drafts on particular funds and not of bills of exchange proper."

We are referred to *Hall* v. *The City of Buffalo,* 1 Keyes, 193; *Conway* v. *Cutting,* 51 N. H. 409; *Risley* v. *Smith,* 39 N. Y. (S. C. R.) 137, and *Lewis et al.* v. *Berry,* 64 Barb. 593, to sustain the doctrine that a court may receive and the jury consider testimony outside of the order itself to prove

that a bill of exchange was, in fact, drawn upon a particular fund instead of ascertaining the character of the instrument from the bill itself.   Of the four cases cited, *Hall* v. *City of Buffalo* and *Conway* v. *Cutting* were actions upon orders drawn upon a particular fund specified in the orders.· Such was not the fact in *Lewis* v. *Berry*, although there were facts connected with that case which do not appear in this. However, we prefer to adopt the principle announced in the many cases above cited, which hold that the order must speak for itself.   Courts have no right, in effect, to interpolate words which were not inserted by the parties, and thus, practically change the character and value of the instrument.   To so hold would be offering a premium to perjury, and the result would be uncertainty and disaster.   The court erred in instructing the jury that the orders set out in the complaint operated as an assignment, and that, therefore, if defendant had notice of such orders it was liable to the extent of the amount therein specified, and which was due to P. & Co.   *Risley* v. *Smith* is not in point.   The question in that case was as to the consideration, which was held insufficient.   The court also erred in giving the tenth instruction.   Defendant's promise to pay the laborers was not an agreement to pay the debt of another.   It was a promise to pay its own debt in a particular manner, and the laborers for whose benefit it was made could have maintained an action against defendant for their pay.   (*Alcalde* v. *Morales*, 3 Nev. 137; *Barker* v. *Bucklin*, 2 Denio, 45; *Seaman* v. *Hasbrouck*, 35 Barb. 151; *Bishop & Carpenter* v. *Stewart*, recently decided by this court.)   The court also erred in giving the thirteenth and fourteenth instructions.   The order given by P. & Co. to defendant to pay the men was an assignment *pro tanto* in their favor.   It was drawn upon a particular fund specified therein, and was an appropriation of such fund to the extent stated.   It was also agreed to by the parties affected thereby.   No written acceptance of such an order was necessary.   After its verbal acceptance by defendant's superintendent P. & Co. had no further control over that amount of the fund.   Nor was that order revoked by the ten-thousand-dollar order set out in the com-

plaint.　The order to pay the men was irrevocable by P. & Co. without the consent of all the workmen for whose benefit it was made, and without the consent of defendant, until all the men had consented to its revocation, for until then defendant was liable for their pay.　After the arrangement to pay the men had been agreed to by all the parties, so far as defendant was concerned, it was a power coupled with an interest, and not revocable in its nature.　(*Tripp* v. *Brownell et al.*, 12 Cush. 379; *Osborne* v. *Jordan*, 3 Gray, 278; Drake on Attachment, secs. 517, 528, 594.)

The second and third instructions offered by defendant should have been given.　We do not deem it necessary to pass upon any other assignments of error contained in the record.

The judgment and order appealed from are reversed and the cause remanded.